IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NICHOLAS FRANCIS DEYO,                    :
                                          :
                     Plaintiff,           :          CIVIL ACTION NO. 23-1658
                                          :
          v.                              :
                                          :
PHILLIP R. ECK and MANOR                  :
TOWNSHIP POLICE,                          :
                                          :
                     Defendants.          :

## MEMORANDUM OPINION

Smith, J.                                                          June 5, 2023

The *pro se* plaintiff, who is currently incarcerated in a county jail, has sought leave to

proceed *in forma pauperis* in this action where he raises claims for federal constitutional violations

under 42 U.S.C. § 1983 and several state-law claims against a township police department and one

of its officers arising out of his arrest in October 2022. Although the plaintiff clearly believes that

his arrest, law enforcement's subsequent searches and seizures, and his current incarceration were

and are unlawful, he has provided little detail in his complaint as to what happened to him. Along

with this fundamental defect in the complaint, the plaintiff (1) raises requests for relief that he

cannot obtain in this non-habeas civil case, such as his immediate release from jail, (2) references

state laws that have no relationship to his case, and (3) makes general allegations against

individuals and entities that are not named defendants in this action, such as claims about the

conditions of his confinement in the county jail. Therefore, while the court will grant the plaintiff

leave to proceed *in forma pauperis*, the court will dismiss the complaint under 28 U.S.C. §

1915(e)(2) for the failure to state a claim. This dismissal will be without prejudice as to those

claims where the plaintiff can potentially allege additional facts in support of his claims, to those

currently unnamed defendants where he would need to file a new action seeking to assert claims against them, and to those requests for relief that are unavailable to him in this case. In all other respects, the dismissals will be with prejudice.

## I.      ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Nicholas Francis Deyo ("Deyo"), commenced this action by filing a complaint against the defendants, the Manor Township Police Department ("MTPD") and MTPD Officer Phillip R. Eck ("Officer Eck"), which was docketed in the United States District Court for the Middle District of Pennsylvania on April 26, 2023. *See* Doc. No. 1. A day later, the Honorable Martin C. Carlson entered a memorandum opinion and order transferring the action to this court. *See* Doc. No. 4, 5. The action was docketed here on May 2, 2023. *See* Doc. No. 6.

Upon review of the docket, Deyo had not paid the filing fee or filed an application for leave to proceed *in forma pauperis* when he filed the complaint. As such, the clerk of court entered an order on May 4, 2023, giving Deyo 30 days from the date of the order to remit the filing fee or file an application for leave to proceed *in forma pauperis*. *See* Doc. No. 8. In response to this order, Deyo submitted an application for leave to proceed *in forma pauperis* (the "IFP Application") and a prisoner trust fund account statement, both of which the clerk's office docketed on May 22, 2023. *See* Doc. Nos. 10, 11. Along with these two documents, Deyo also submitted a motion for a preliminary injunction, *see* Doc. No. 9, which this court denied via an order entered on May 26, 2023. *See* Doc. No. 12.

As for Deyo's allegations in the complaint, they relate to Officer Eck and other members of law enforcement arresting him on October 29, 2022, searches and seizures that occurred at the time of his arrest or thereafter, and his subsequent detention at the Lancaster County Prison ("LCP") while he awaits the disposition of criminal charges filed against him. *See* Compl. at ECF

pp. 7, 9, Doc. No. 1; *Commonwealth v. Deyo*, No. CP-36-CR-4747-2022 (Lancaster Cnty. Ct. Com. Pl.), *available at*: https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-36-CR-0004747-2022&dnh=e3do6uApn0NW0KthM0mMJA%3D%3D.[1] Deyo alleges that on the morning of his arrest, he was in his "standing vehicle" and "waiting on a friend to go fishing for the weekend," when he noticed Officer Eck park his vehicle behind him. Compl. at ECF p. 9. Upon seeing Officer Eck, Deyo shut off his vehicle, lowered his window, and placed his hands in a visible position. *See id.*

Once Officer Eck encountered Deyo, he "immediately asked for [his] I.D. and ushered [him] out of [his] vehicle without exigent circumstances or probable cause." *Id.* Deyo asserts that Officer Eck "and the other officers involved took advantage" of his limited knowledge of the law and exceeded their legal authority. *Id.* Deyo "was overcome by this idea that [Officer] Eck was scheming and probing for injustice, and that things were going to be made unnecessarily complicated." *Id.* at ECF p. 8. He contends that he was "wrongfully placed under duress" and "taken into custody by [Officer] Eck and [a non-defendant,] Corporal Tice [("Cpl. Tice")]." *Id.*

Deyo alleges that Officer Eck, Cpl. Tice, and "various other government actors," violated his rights by "restricting [his] freedom of movement with verbal commands[] and did also escalate from a mere encounter to an investigatory detention without reasonable suspicion or probable

---

[1] This court may review and take judicial notice of the publicly available criminal docket records while screening the complaint under 28 U.S.C. § 1915(e)(2). *See Castro-Mota v. Smithson*, Civ. A. No. 20-CV-940, 2020 WL 3104775, at *1 n.3 (E.D. Pa. June 11, 2020) (explaining that district courts may consider matters of public record, such as publicly available criminal dockets, "when . . . screening . . . a *pro se* complaint under [28 U.S.C.] § 1915" (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006))); *Wesley v. Varano*, Civ. A. No. 1:12-CV-1131, 2012 WL 2813827, at *1 (M.D. Pa. July 10, 2012) ("In disposing of a 12(b)(6) motion, in addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case; hence, a court also may consider these items in screening a complaint under the provisions of 28 U.S.C. § 1915." (citations omitted)); *Donahue v. Dauphin Cnty.*, Civ. A. No. 1:17-cv-1084, 2017 WL 3405112, at *1 n.1 (M.D. Pa. June 27, 2017) ("This publicly available state criminal docket, available online . . ., is a public record of which the Court may take judicial notice in considering dismissal for failure to state a claim." (citations omitted)); *Pearson v. Krasley*, Civ. A. No. 16-66, 2017 WL 2021061, at *1 (E.D. Pa. May 11, 2017) ("A court may also consider public records such as criminal dockets" when analyzing whether complaint fails to state claim for relief under Rule 12(b)(6)).

cause (knowingly and wittingly) exceeding their legal authority in the process." *Id.* at ECF p. 6. Deyo describes Officer Eck's conduct as "shady and unquestionably malicious and carried out deliberately and in bad faith." *Id.* He claims that Officer Eck "did not activate his body cam for the first 1/4 of the ordeal, he also attempted to stricken [sic] (or exclude) evidence that might shed light on the situation." *Id.* He further claims that Officer Eck "construct[ed] a false narrative" that was damaging to Deyo's character, as well as "falsified an affidavit and other works in order to produce a (fruitless) search warrant." *Id.*

Deyo asserts that he has suffered mentally and physically due to the "unlawful police action, and fallacious claims" made against him. *Id.* at ECF p. 8. Additionally, he avers that Officer Eck, and "other actors" took his "lawfully acquired property . . . from him."[2] *Id.*

Since his arrest, Deyo has been incarcerated at the LCP. Deyo alleges that since his incarceration, his safety and freedom have been adversely affected, he has been refused mental health and medical treatment, and his dietary needs have not been met. *See id.* He also has been subjected to "excessive and public strip searches in public areas in RHU," has endured "unlivable habitation including filth, black mold," and has been forced to "eat disgusting, mass-produced unhealthy foods, very limited portions as well." *Id.* at ECF p. 10.

Based on these allegations, Deyo asserts causes of action under 42 U.S.C. § 1983 for violations of his rights under the First, Second, Fourth, Fifth, Sixth, Eighth, and Ninth Amendments to the United States Constitution. *See id.* at ECF p. 3. He also raises claims for numerous violations of the Pennsylvania Constitution and several Pennsylvania statutes. *See id.* at ECF pp. 3, 5. For relief, Deyo seeks monetary relief and various forms of declaratory relief. *See*

---

[2] Deyo does not identify this property in the complaint. However, in his motion for a preliminary injunction, he appears to state that officers seized a firearm and body armor from the vehicle. *See* Mot. for Prelim. Inj. at ECF p. 2, Doc. No. 9.

*id.* at ECF p. 7. He also seeks his immediate release and the return of "the property that [Officer] Eck stole" from him. *Id.* at ECF p. 10.

## II.   DISCUSSION

### A.   The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States,* 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court

5

costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at

1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Deyo is unable to prepay the fees

to commence this action. Therefore, the court will grant him leave to proceed *in forma pauperis*.[3]

**B.      Standard of Review for Screening Complaints Under 28 U.S.C. § 1915 and Sua
        Sponte Review for Subject-Matter Jurisdiction**

Because the court has granted Deyo leave to proceed *in forma pauperis*, the court must

engage in the second part of the two-part analysis and examine whether the complaint is frivolous,

malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a

defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that

"[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is

frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks

monetary relief against a defendant who is immune from such relief"). A complaint is frivolous

under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490

U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory."

*Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the
> definition of the term "malicious," engage in a subjective inquiry into the litigant's
> motivations at the time of the filing of the lawsuit to determine whether the action
> is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the

judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*,

Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

---

[3] As Deyo is incarcerated, he must fully pay the filing fee in installments due to the Prison Litigation Reform Act. *See*
28 U.S.C. § 1915(b).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

The court also has the authority to examine subject-matter jurisdiction sua sponte. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte"). The party commencing the action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## C.   <u>Analysis</u>

### 1.   **Federal Claims**

Deyo brings his federal constitutional claims via 42 U.S.C. § 1983. *See* Compl. at ECF p. 3. Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff

must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). Additionally, the plaintiff must allege the personal involvement of each defendant in the alleged constitutional violation; in other words, the plaintiff must state how each defendant was involved in the events and occurrence giving rise to the claims in the operative complaint. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.); *Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Although Deyo has specifically indicated in the complaint that he is attempting to bring claims under section 1983 for alleged violations of his constitutional rights, his claims are articulated in a generalized and conclusory manner. Nevertheless, liberally construing his claims, the court understands Deyo to primarily present claims based on violations of his Fourth Amendment rights.[4] Despite that liberal construction, Deyo has not alleged a plausible claim against any defendant as explained below.

---

[4] Although Deyo lists additional references as the bases for this court's jurisdiction in the complaint, *see, e.g.*, Compl. at ECF pp. 3, 5 (listing various sections of the Pennsylvania Crimes Code and "U.S. Amendment(s) 1st, 2nd, 4th, 5th, 8th, 9th), such passing references are insufficient to raise these claims. *See Campbell v. LVNV Funding, LLC*, Civ. A. No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (explaining that "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other" (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))); *Alexis v. Sessions*, Civ. A. No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018) ("Although the complaint makes additional references to the [F]irst, [F]ifth, and [S]ixth [A]mendments, and civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claims, 18 U.S.C. §§ 1961–67, when describing the parties and requesting relief, such "passing reference[s]" are not sufficient to raise a civil RICO claim or a [F]irst, [F]ifth, or [S]ixth [A]mendment claim." (citations omitted)).

a.      Claims Against the MTPD

Deyo names the MTPD as a defendant in this case. His claims against the MTPD are implausible because the MTPD is not a "person" that can be sued under section 1983. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability." (citing *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 671 n.7 (3d Cir. 1988))); *Mikhaeil v. Santos*, 646 F. App'x 158, 163 (3d Cir. 2016) (per curiam) (concluding that district court "correctly determined that the Jersey City Police Department was not a proper party to this action" and explaining that "[a]lthough local governmental units may constitute 'persons' against whom suit may be lodged under § 1983, a city police department is a governmental sub-unit that is not distinct from the municipality of which it is a part"). Instead, the proper defendant for a claim against the MTPD is the municipality itself, namely, Manor Township. *See, e.g.*, *Cohen v. Chester Cnty. Dep't of Mental Health/Intellectual Disability Servs.*, Civ. A. No. 15-5285, 2016 WL 3031719, at *4 (E.D. Pa. May 24, 2016) (explaining that as municipal agencies are not proper defendants under section 1983, "the municipality is the proper defendant [in] § 1983 claims arising from the agency's actions"). Since Deyo may not proceed on his section 1983 claim against the MTPD insofar as it is not a proper defendant for such a claim, the court will dismiss with prejudice his section 1983 claim against the MTPD.[5]

---

[5] Even if the court were to construe Deyo's claim as one against Manor Township, he has failed to state a plausible claim against the township because nothing in the complaint suggests that any violation of his constitutional rights stemmed from a municipal policy or custom. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). To state a plausible section 1983 municipal liability claim, Deyo "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted). A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not

b.   Official Capacity Claims Against Officer Eck

When drafting the complaint, Deyo checked the boxes on the form that indicate he seeks to sue Officer Eck in his individual and official capacities. Official capacity claims against individual government employees are indistinguishable from claims against the governmental entity that employs them, here, Manor Township. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Thus, to plausibly assert a claim against Officer Eck in his official capacity, Deyo must include sufficient allegations that would allow for liability against Manor Township. *See Thomas v. City of Chester*, Civ. A. No. 15-3955, 2016 WL 1106900, at *2

---

specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." *Id.* (internal quotation marks and alterations omitted). Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz*, 915 F.2d at 850 (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").

    In addition,

> [t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice is likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg*, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Natale*, 318 F.3d at 584 (alterations in original) (internal footnote omitted).

(E.D. Pa. Mar. 21, 2016) ("A suit for damages against an individual municipal employee in his or her 'official capacity' is not cognizable unless the requirements of *Monell* are met." (citation omitted)); *see also McHugh v. Koons*, Civ. A. No. 14-7165, 2015 WL 9489593, at *9 (E.D. Pa. Dec. 30, 2015) ("An official capacity suit against a prosecutor is essentially a municipal liability claim against the District Attorney's Office[ ] pursuant to *Monell*."). To assert plausible claims against Manor Township, Deyo must allege that it has a policy or custom which caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694 ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").[6]

As the court has already noted, Deyo has failed to allege facts to support *Monell* liability against Manor Township. *See supra* n.5. Deyo has not identified a municipal policy or custom of Manor Township regarding any of the alleged constitutional violations, that such policy or custom caused the constitutional violations, or identified municipal failures amounting to deliberate indifference. Accordingly, Deyo's official capacity claims against Officer Eck are implausible, and the court will dismiss them without prejudice.

---

[6] A plaintiff may also state a plausible basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

c.      Individual Capacity Claims Against Officer Eck

The court understands Deyo to be asserting Fourth Amendment claims for false arrest, false

imprisonment, and unreasonable search and seizure against Officer Eck. *See* Compl. at ECF pp.

6–10.

i.      *False Arrest and False Imprisonment*

False arrest and false imprisonment are "nearly identical claims." *Brockington v. City of*

*Philadelphia*, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005). Both claims are premised on an arrest

without probable cause. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) ("[W]here

the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false

imprisonment based on a detention pursuant to that arrest. . . . If the jury found in [the arrestee's]

favor on the false arrest claim, it could also find that [they] suffered a violation of [their]

constitutional rights by virtue of his detention pursuant to that arrest."); *Noviho v. Lancaster Cnty.*,

683 F. App'x 160, 164 (3d Cir. 2017) ("Fourth Amendment false imprisonment and false arrest

claims rise and fall on whether probable cause existed for the arrest." (citation omitted)). To state

a section 1983 claim for false arrest or false imprisonment, the plaintiff must show: "(1) that there

was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes*

*Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted). Therefore, Deyo must allege facts

sufficient to support a reasonable inference that Officer Eck acted without probable cause. If he

fails to do so, then both claims fail as a matter of law.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting

officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an

offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*,

71 F.3d 480, 483 (3d Cir. 1995) (citation omitted). Courts "consider the existence of probable

cause via a 'common sense approach' based on the totality of the circumstances, and viewed from the perspective of an objectively reasonable police officer." *Young v. City of Pittsburgh*, 562 F. App'x 135, 140 (3d Cir. 2014) (internal citation omitted). The standard is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). Probable cause exists if "at the moment the arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [they] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing" that the plaintiff had violated the law. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Here, while Deyo clearly seeks to present claims based on alleged violations of his Fourth Amendment rights in connection with his arrest, he merely alleges that Officer Eck lacked probable cause to arrest, and that Officer Eck exceeded his authority. *See* Compl. at ECF pp. 6–10. Deyo does not include sufficient factual allegations about the arrest itself to support an inference that the arrest, his detention, and subsequent prosecution, were unconstitutional. In addition, he has not alleged any details about what he was arrested for, or the circumstances surrounding his arrest. Without these details, the court is unable to discern whether Deyo can plausibly state a Fourth Amendment or other constitutional claim against Officer Eck. *See, e.g.*, *Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (per curiam) (explaining that, to extent plaintiff was asserting claims for false arrest and imprisonment, "[plaintiff] needed to point to facts suggesting [defendant] lacked probable cause to believe he had committed the offense for which he was arrested"); *Jenkins v. City of Philadelphia*, Civ. A. No. 15-3271, 2015 WL 5585186, at *3 (E.D. Pa. Sept. 23, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims

because plaintiff failed to assert plausible claim of lack of probable cause where plaintiff, while alleging he was twice arrested, did not have drugs in his possession, did not break the law, and police confiscated his property, "assert[ed] no other facts that would shed light on the circumstances under which he was arrested, on what the officers knew or should have known at the time of the arrest, or on any other factor that might have a bearing on the claims he attempts to raise"); *Santiago v. Humes*, Civ. A. No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" when plaintiffs simply alleged that all allegations against them in the underlying criminal proceedings were false). Accordingly, the court will dismiss without prejudice Deyo's Fourth Amendment claims for false arrest and false imprisonment.[7]

ii.     *Unreasonable Search and Seizure*

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. As indicated by this language, "the underlying command of the Fourth Amendment is always that searches and seizures be reasonable." *New Jersey v. T.L.O.*, 469 U.S.

---

[7] Under the doctrine of abstention developed in *Younger v. Harris*, 401 U.S. 37 (1971), there is "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). The specific elements of *Younger* abstention are that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989). Because Deyo's Fourth Amendment claims are so undeveloped, the court will not address whether *Younger* abstention necessitates that such claims be stayed pending resolution of the state judicial proceedings. However, if Deyo files an amended complaint raising nonconclusory Fourth Amendment claims, the court will consider whether abstention is appropriate at that time, if applicable.

325, 337 (1985). Nevertheless, "what is reasonable depends on the context within which a search takes place." *Id.*

When a search occurs without a warrant, it is "presumptively unreasonable under the Fourth Amendment." *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996) (citations omitted). On the other hand, where a search is made pursuant to a warrant, the Fourth Amendment requires that the warrant shall not issue unless it is based on probable cause, is supported by a sworn affidavit, and particularly describes both the place to be searched and the items to be seized. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (describing Fourth Amendment's requirements for issuance of search warrant); *see also United States v. Rankin*, 442 F. Supp. 2d 225, 229 (E.D. Pa. 2006) ("Pursuant to the Fourth Amendment, a valid warrant must describe the place to be searched and the items to be seized with particularity. A warrant is impermissibly overbroad if it authorizes 'a general, exploratory rummaging in a person's belongings.'" (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971))). Also, "the breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate." *United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006).

As with his other Fourth Amendment claims, Deyo has limited the court's ability to review his unreasonable search and seizure claim because he has not included sufficient factual allegations surrounding the alleged unreasonable search and seizure. *See Medina v. Aprile*, Civ. A. No. 23-1057, 2023 WL 3440236, at *9 (E.D. Pa. May 12, 2023) ("To properly analyze a claim asserting an illegal search and seizure under the Fourth Amendment, [the plaintiff] must plead the circumstances under which the search arose." (citation omitted)). For instance, Deyo includes no allegations regarding whether Officer Eck searched him or his property pursuant to a search

warrant or conducted a warrantless search. Although Deyo briefly references a search warrant in the complaint, *see* Compl. at ECF p. 7, he does not identify what was seized pursuant to that warrant or if Officer Eck was the individual officer who conducted the search.[8] Moreover, Deyo alleges that other law enforcement officers, and even "more than one [police] department" was involved in the . . . incident that occurred on" October 29, 2022, which adds more confusion to his limited factual allegations. At bottom, absent sufficient factual allegations, Deyo has not pleaded a plausible Fourth Amendment claim for an unreasonable search and seizure. Therefore, the court will dismiss this claim, but will do so without prejudice to Deyo amending this claim if he can do so.

       d.      <u>Claims Based on Conditions of Confinement at LCP</u>

Deyo raises claims relating to his confinement at LCP since his arrest. He alleges that he has been refused medical treatment, has been subjected to "unlivable" conditions, and has experienced excessive and public strip searches during his confinement at LCP. *See* Compl. at ECF pp. 8, 10. Even assuming *arguendo* that some of these allegations could be liberally construed to rise to the level of Fourteenth Amendment claims,[9] Deyo has not adequately tied those allegations to Officer Eck or MTPD, and the court cannot discern a plausible basis for doing so as neither of them would seemingly play any role in what occurs in the LCP. *See Rode*, 845 F.2d at

---

[8] Deyo alleges that his "lawfully acquired property was stolen from [him] by [Officer] Eck and other actors," but again, he does not allege, *inter alia*, what Officer Eck searched or seized, the circumstances relating to the search and seizure, and whether Officer Eck's actions were conducted pursuant to a warrant or via a warrantless search. *Cf. Collick v. William Paterson Univ.*, Civ. No. 16-471, 2021 WL 2374388, at *5 (D.N.J. June 10, 2021) (describing different analysis of probable cause applicable when arrest occurred pursuant to warrant or pursuant to warrantless arrest).

[9] The Fourteenth Amendment applies to claims by pretrial detainees, whereas the Eighth Amendment applies to claims by individuals incarcerated "after sentence and conviction." *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)); *see also Natale*, 318 F.3d at 581 n.5 (explaining that Due Process Clause of Fourteenth Amendment "provides at a minimum, no less protection, than is provided by the Eighth Amendment," but indicating that court was not "decid[ing] whether the Due Process Clause provides additional protections to pretrial detainees beyond those provided by the Eighth Amendment to convicted prisoners" (citations and internal quotation marks omitted)). Deyo is currently a pretrial detainee, so the Fourteenth Amendment would apply to his claims.

1207 (requiring personal involvement of defendant in alleged constitutional violation). Accordingly, the court will dismiss Deyo's claims based on the conditions of his confinement or his treatment at LCP. If Deyo intends to pursue any such claims, he must file them in a separate lawsuit against appropriate defendants.[10]

e.    Return of Property

Among Deyo's requests for relief in the complaint is a request that the unidentified property seized by Officer Eck be returned to him. *See* Compl. at ECF p. 10. The court construes this request as Deyo's attempt to assert a Fourteenth Amendment due process claim based on the seizure of his property at the time of his arrest or thereafter.

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. To state a plausible Fourteenth Amendment due process claim, a plaintiff must allege that "(1) [they] w[ere] deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to [them] did not provide due process of law." *Rosado v. City of Coatesville*, Civ. A. No. 19-2426, 2020 WL 1508351, at *3 (E.D. Pa. Mar. 30, 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006)). "A due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'" *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).

---

[10] Should Deyo file a second lawsuit, he will be obligated to pay the fees for that lawsuit or, if he cannot afford to do so, he must seek leave to proceed *in forma pauperis* by filing an appropriate application and accompanying documents. *See* 28 U.S.C. §§ 1914, 1915.

While due process usually requires some type of pre-deprivation hearing, a post-deprivation remedy may also satisfy the requirement. *Zinermon*, 494 U.S. at 117. Where there is no pre-deprivation hearing, the court will

> look at the post-deprivation process that the state provides to determine if it was "constitutionally adequate[,] . . . [and do so by] examin[ing] the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law."

*Frein v. Pa. State Police*, Civ. A. No. 3:20-939, 2021 WL 1172980, at *4 (M.D. Pa. Mar. 29, 2021) (alterations in original) (quoting *Zinermon*, 494 U.S. at 126).

Furthermore, "to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to [them], unless those processes are unavailable or patently inadequate." *Alvin*, 227 F.3d at 116. "A state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail [themself] of them." *Id.* (citations and alterations omitted). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what [they] want[]." *Id.* (citations omitted).

Pennsylvania provides a process to request the return of property seized by law enforcement. Under Pennsylvania law, "[a] person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of property on the ground that [the aggrieved person] is entitled to lawful possession thereof." Pa. R. Crim. P. 588(A). This motion must be "filed in the Court of Common Pleas for the judicial district in which the property was seized." *Id.*

Through Rule 588(A), Pennsylvania law provides an adequate remedy when police seize property pursuant to an investigation. *See McKenna v. Portman*, 538 F. App'x 221, 224–25 (3d

Cir. 2013) (holding that no cognizable due process claim could exist because Rule 588(A) "provides a process to challenge the seizure of property and a protocol to request its return" (citing *Potts v. City of Philadelphia*, 224 F. Supp. 2d 919, 938 (E.D. Pa. 2002) and *Kauffman v. Pa. Soc'y for the Prevention of Cruelty to Animals*, 766 F. Supp. 2d 555, 571 n.7 (E.D. Pa. 2011)); *Johnson v. Koehler*, Civ. A. No. 4:18-CV-807, 2020 WL 5488939, at *6 (M.D. Pa. June 11, 2020) (same), *R. & R. adopted*, Civ. A. No. 18-807, 2020 WL 5439899 (M.D. Pa. Sept. 10, 2020); *see also Houston v. City of Philadelphia*, Civ. A. No. 13-4442, 2015 WL 4404853, at *6 (E.D. Pa. July 20, 2015) (granting summary judgment on plaintiff's Fourteenth Amendment due process claim based on defendants' failure to return plaintiff's gun after charges were dismissed because plaintiff failed to meet burden of showing that Rule 588 relief was unavailable or patently inadequate), *aff'd* 669 F. App'x 89 (3d Cir. 2016) (per curiam).

Here, Deyo does not allege in the complaint that he filed a motion for the return of his property in state court. Moreover, he does not challenge the adequacy of Pennsylvania's procedure for the return of property. Consequently, Deyo has failed to state a plausible claim for relief pursuant to the Fourteenth Amendment's Due Process Clause. *See Gulley v. Haymaker*, Civ. A. No. 06-131J, 2009 WL 763549, at *12 (W.D. Pa. Mar. 23, 2009) ("Plaintiff does not appear to have availed himself of the procedures set forth by the Pennsylvania Criminal Rules, i.e., Plaintiff has not filed a motion for the return of his property, nor does Plaintiff challenge Pennsylvania's procedure for the return of property. Thus, he has failed to state an adequate deprivation."). Therefore, the court will dismiss this claim without prejudice to Deyo's right to pursue the return of his property in state court. *See Scott v. Tonkin*, No. 1:20-cv-2067, 2020 WL 6940828, at *4 (M.D. Pa. Nov. 25, 2020) (dismissing *pro se* plaintiff's Fourteenth Amendment due process claim

for alleged failure to return seized property "without prejudice to [p]laintiff's right to pursue the return of [their] property in state court").

### f.      Request for Release from Custody

Deyo also seeks to be released from custody. *See* Compl. at ECF p. 10. A prisoner seeking dismissal of state charges because of constitutional violations must pursue their claims in a petition for a writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Jaffery v. Atl. Cnty. Prosecutor's Office*, 695 F. App'x 38, 41–42 (3d Cir. 2017) (per curiam) ("[T]o the extent Jaffery seeks dismissal of the charges against him as a result of constitutional violations, such relief is only available through a writ of habeas corpus."). Accordingly, the court will dismiss this claim without prejudice to Deyo filing a habeas petition seeking this relief.[11]

### 2.      State-Law Claims

Although unclear, it is possible that Deyo is attempting to assert several state-law causes of action against the defendants. *See* Compl. at ECF pp. 3, 5, 8. Because the court has dismissed Deyo's federal claims, the court will not exercise supplemental jurisdiction over any state-law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if-- ... (3) the district court has dismissed all claims over which it has original jurisdiction...."). As the Supreme Court instructs:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even

---

[11] Deyo can seek federal habeas relief by filing a petition for a writ of habeas corpus after exhausting state remedies along with remitting either a $5 filing fee or filing an application for leave to proceed *in forma pauperis*. If Deyo files such a petition, the clerk of court will docket it as a new civil action, and it will proceed separately from this case.

> though not insubstantial in a jurisdictional sense, the state claims should be
> dismissed as well. Similarly, if it appears that the state issues substantially
> predominate, whether in terms of proof, of the scope of the issues raised, or of the
> comprehensiveness of the remedy sought, the state claims may be dismissed
> without prejudice and left for resolution to state tribunals.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966). Here, the court finds no basis

to retain supplemental jurisdiction over the (potentially) remaining state-law claims.

Nevertheless, there appears to be an independent basis for subject-matter jurisdiction over

any state-law claims under the diversity jurisdiction statute, 28 U.S.C. § 1332, which grants a

district court subject-matter jurisdiction over a case in which "the matter in controversy exceeds

the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different

States." 28 U.S.C. § 1332(a)(1). Section 1332(a) requires "'complete diversity between all

plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This

means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the

same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir.

2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg.

Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).

For purposes of determining whether parties are completely diverse, an individual is a

citizen of the state where the individual is domiciled, meaning the state where the individual is

physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d

Cir. 2011) ("[D]omicile is established by an objective physical presence in the state or territory

coupled with a subjective intention to remain there indefinitely." (citation omitted)). Here, Deyo

alleges that he is a citizen of the State of New York and that the defendants are located in

Pennsylvania.[12] *See* Compl. at ECF p. 2. Thus, the parties appear to be completely diverse for purposes of section 1332(a).[13]

Deyo appears to assert a variety of possible state-law claims: (1) claims based on violations of Pennsylvania's Criminal Code; (2) claims based on violations of other Pennsylvania statutes; (3) defamation; and (4) violations of the Pennsylvania Constitution. *See id.* at ECF pp. 3–10. The court will address each of these possible state-law claims in turn.

a.    Claims for Violations of Pennsylvania's Criminal Code

Deyo references several statutes from Pennsylvania's Criminal Code in his complaint. *See* Compl. at ECF pp. 3, 5. More specifically, Deyo references: 18 Pa. C.S. § 312 (de minimis infractions); 18 Pa. C.S. § 502 (justification a defense); 18 Pa. C.S. § 503 (justification generally); 18 Pa. C.S. § 504 (execution of public duty); 18 Pa. C.S. § 904 (incapacity, irresponsibility or immunity of party to solicitation or conspiracy); 18 Pa. C.S. § 908 (prohibited offensive weapons); 18 Pa. C.S. § 2705 (recklessly endangering another person); 18 Pa. C.S. § 2902 (unlawful restraint); 18 Pa. C.S. 2903 (false imprisonment); 18 Pa. C.S. § 4902 (perjury); 18 Pa. C.S. § 4903 (false swearing); 18 Pa. C.S. § 6105 (persons not to possess, use, manufacture, control, sell or transfer firearms); 18 Pa. C.S. § 6120 (limitation on regulation of firearms and ammunition); 18 Pa. C.S. § 6122 (proof of license and exception); and 18 Pa. C.S. § 7507.1 (invasion of privacy). *See id.*

---

[12] Although Deyo is currently incarcerated in the LCP, his domicile "before his imprisonment presumptively remains his domicile during his imprisonment. That presumption, however, may be rebutted by showing a bona fide intent to remain in the state of incarceration on release." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010) (per curiam) (citations omitted); *see also Robinson v. Temple Univ. Health Servs.*, 506 F. App'x 112, 115 (3d Cir. 2012) (per curiam) (explaining that "[t]he traditional view is that a prisoner remains a citizen of the state of which he was a citizen before his imprisonment," and that other circuits "follow a rebuttable presumption model; those courts presume that a prisoner does not change his domicile by being incarcerated in a new state, but they permit him to rebut that presumption"). There is no indication in the complaint that Deyo intends to remain in Pennsylvania should he be released from incarceration.

[13] The amount-in-controversy requirement of $75,000 appears to be met due to the nature of Deyo's general allegations and his request for significant monetary relief. *See* Compl. at ECF p. 7.

To the extent that Deyo relies on these criminal statutes as a basis of civil liability against the defendants, he has failed to state a claim because there is no private cause of action for the crimes he possibly believes the defendants committed. *See Kovalev v. Lab. Corp. of Am. Hldgs.*, Civ. A. No. 22-552, 2023 WL 2163860, at *17 (E.D. Pa. Feb. 22, 2023) (explaining that plaintiff cannot maintain civil claim for reckless endangerment based on 18 Pa. C.S. § 2705 because "there is simply no civil remedy under this statute" (citing *Muhammad v. City of Lewisburg, PA*, No. 21-cv-284, 2022 WL 774880, at *6 (M.D. Pa. Jan. 20, 2022)); *Williams v. Wetzel*, No. 1:17-cv-79, 2020 WL 583983, at *17 (M.D. Pa. Feb. 6, 2020) ("Pennsylvania courts 'have on occasion recognized that tort liability may be imposed for Crimes Code violations' and that the 'same conduct that constitutes a violation of a criminal statute may also form the basis for a separate civil claim.' *D'Errico v. DeFazio*, 763 A.2d 424, 430 (Pa. Super. Ct. 2000). Here, however, Plaintiff 'do[es] not seek redress under general negligence or other well-established common law principles[;] instead, [he] seek[s] to impose civil liability based on the criminal statute[s] [themselves].' *Id.* Plaintiff does not point to, and the Court has not located, any indications that there are private causes of action for the various crimes Plaintiff believes Defendants committed. *See, e.g., Bullock v. Bimbo Bakeries USA*, No. 1:09-cv-1902, 2010 WL 1753643, at *5 (M.D. Pa. Feb. 4, 2010) (concluding that plaintiff could not maintain a private cause of action for alleged theft crimes under Pennsylvania law), *Report and Recommendation adopted by* 2010 WL 1753770 (Apr. 27, 2010)."), *aff'd*, 827 F. App'x 158 (3d Cir.) (per curiam). Nevertheless, because Deyo is proceeding *pro se*, the court will examine whether there are civil analogs to his references to the Pennsylvania Crimes Code.

The only civil torts the court could locate are for false imprisonment, false arrest, and invasion of privacy.[14] As for the torts of false imprisonment and false arrest "[i]n Pennsylvania, '[they] are essentially the same claim' with the same two elements: (1) 'the detention of another person'; and (2) 'the unlawfulness of such detention.'" *Barasky v. Dent*, No. 4:21-CV-2041, 2023 WL 2775148, at *4 (M.D. Pa. Apr. 4, 2023) (quoting *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008)). If Deyo is attempting to assert these two state-law torts, his allegations suffer from the same deficiencies as his identical section 1983 claims, i.e., he has not supplied sufficient factual allegations about what occurred to him to state plausible claims. As such, the court will dismiss these claims, but will dismiss them without prejudice should Deyo attempt to replead them in an amended complaint

As for the tort of invasion of privacy, "Pennsylvania law [recognizes] only four distinct invasion of privacy torts: '(1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to one's private life, and (4) publicity placing one in a false light.'" *Dhingra v. SAP Am., Inc.*, Civ. A. No. 22-765, 2023 WL 2245105, at *7 n.13 (E.D. Pa. Feb. 27, 2023) (quoting *Frankel v. Warwick Hotel*, 881 F. Supp. 183, 187 (E.D. Pa. 1995)). Out of these four distinct torts, the only one the court can determine is potentially applicable is false light invasion of privacy.

Pennsylvania "has adopted the Restatement (Second) of Torts['] definition of" false light invasion of privacy. *Miller v. Shubin*, Case No. 4:15-cv-1754, 2016 WL 2752675, at *8 (M.D. Pa. May 11, 2016); *see also Harris by Harris v. Easton Publ'g Co.*, 483 A.2d 1377, 1383 (Pa. Super. 1984) ("Our state courts have cited with approval the Restatement (Second) of Torts §§ 652B–E

---

[14] Although Deyo mentions the criminal offenses of perjury and false statements and references fabricating evidence in the complaint, "Pennsylvania does not recognize a private civil cause of action sounding in fabrication of evidence or perjury." *Royal v. Macy's Corp.*, Civ. A. No. 21-4439, 2022 WL 1500553, at *4 (E.D. Pa. May 11, 2022) (citing *Ginsburg v. Halpern*, 118 A.3d 201, 202 (Pa. 1955)); *Ginsburg*, 118 A.3d at 202 ("Even if defendants had been shown to have volunteered to be witnesses and then [gave] false testimony against plaintiff [it] would not constitute a valid cause of action. . . . We believe there is no civil action for perjury . . . ." (first two alterations in original)).

for support regarding invasion of privacy matters. We believe that the Restatement most ably defines the elements of invasion of privacy as that tort has developed in Pennsylvania." (internal citation omitted)). Under section 652E of the Restatement:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E.

The difference between invasion of privacy—false light and defamation is "false light invasion of privacy offers redress not merely for the publication of matters that are provably false, but also for those that, although true, are selectively publicized in a manner creating a false impression." *Miller*, 2016 WL 2752675, at *8 (citation and internal quotation marks omitted). To prove invasion of privacy false light "[i]t is enough that [the plaintiff] is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." Restatement (Second) Torts § 652E cmt. b (describing false light invasion of privacy's relation to defamation). Essentially, "[t]he tort of false light is . . . committed when someone tells part of the story, and selects the worst parts of the story to make the other look bad." *Miller*, 2016 WL 2752675, at *8.

Here, Deyo alleges that Officer Eck "construct[ed] a false narrative that was incredibly damaging to [his] character." Compl. at ECF p. 6. Presuming that this is his attempt to plead an invasion of privacy claim, he has failed to state a plausible claim because he does not identify the "false narrative" or provide details about what Officer Eck did to place him in a false light.

26

Therefore, the court will also dismiss this claim without prejudice to Deyo repleading it in an amended complaint if he is attempting to bring such a claim.

b.   Claims Based on Other Pennsylvania Statutes

In addition to his various references to the Pennsylvania Criminal Code, Deyo mentions several other Pennsylvania statutes under which he may be attempting to assert claims.[15] Those statutes are: 11 Pa. C.S. § 12005 (powers of police officers to arrest); 18 Pa. C.S. § 9111 (duties of criminal justice agencies); 18 Pa. C.S. § 9153 (individual rights on access and review); 18 Pa. C.S. § 9183 (civil actions); and 54 Pa. C.S. § 1124 (injury to business or reputation; dilution). *See* Compl. at ECF p. 5. Four of these statutes clearly have no relationship to this case, and it is very much unclear if the fifth statute applies.

The first statute, 11 Pa. C.S. § 12005, relates to the powers of police officers in third class cities in Pennsylvania. The next three statutes, 18 Pa. C.S. §§ 9111, 9153, and 9183, are sections of Pennsylvania's Criminal History Record Information Act, 18 Pa. C.S. §§ 9101–83. Section 9111 imposes a duty on criminal justice agencies in Pennsylvania to, *inter alia*, "maintain complete and accurate criminal history record information." 18 Pa. C.S. § 9111. While the court understands Deyo as claiming that he was falsely arrested and charged, if the arrest and charges are part of his criminal history, at this point that criminal history is accurate. Section 9153 states that "[a]ny individual exercising his or her right to access and review under the provisions of this subchapter shall be informed when criminal history record information is made available that he or she is under no obligation to divulge such information to any person or agency." 18 Pa. C.S. § 9153. The court cannot discern how this section applies here. The third section, section 9183, provides for a civil action for "[a]ny person aggrieved by a violation of the provisions of this chapter or of the

---

[15] Dayo also references Pennsylvania's defamation statute, which the court discusses in the next section of this memorandum opinion.

rules and regulations promulgated under this chapter," there are no allegations in the complaint as to how the Act has been violated or how he was aggrieved by any such violation.

The final statute Deyo mentions, 54 Pa. C.S. § 1124, is a section of the Pennsylvania Trademark Act, 54 Pa. C.S. §§ 1101–26. While it does pertain to an injury to reputation, and Deyo does allege that the defendants have hurt his reputation, there are no trademarks at issue in this case and, as such, Deyo has not pleaded a plausible claim under this statute.

As Deyo has failed to state a plausible claim for relief under any of these five statutes, the court will dismiss them. The dismissals with be with prejudice as to all except for 18 Pa. C.S. § 9183, should Deyo be able to plead facts that could possibly fall under that section in an amended complaint.

c.     Defamation

Dayo appears to be attempting to assert a cause of action for defamation. *See* Compl. at ECF p. 5 (referencing 42 Pa. C.S. §§ 8341–45). Under Pennsylvania state law,[16] a plaintiff establishes a defamation claim by proving (1) the defamatory character of the communication; (2) publication of the communication by the defendant; (3) application to the plaintiff; (4) the recipient's understanding of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) the defendant lacked a conditional privilege to make the statement. 42 Pa. C.S. § 8343(a) (West 1998); *see also Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014) (listing relevant elements); *Mallory v. S&S Publishers*, 260 F. Supp. 3d 453, 459 (E.D. Pa. 2017) (same). In addition, a defamatory statement which "imputes a criminal offense, loathsome disease, business misconduct, or serious sexual misconduct . . . constitutes defamation *per se* and proof of

---

[16] This court has jurisdiction over these state-law claims based on diversity. "As we are sitting in diversity, Pennsylvania law governs." *McCafferty v. Newsweek Media Grp.*, 955 F.3d 352, 356 (3d Cir. 2020).

'special' damages is not required." *Rose v. Dowd*, 265 F. Supp. 3d 525, 531 (E.D. Pa. 2017) (citations omitted). The difference between defamation and defamation *per se* is that "only general damages, *i.e.*, proof that one's reputation was actually affected by the defamation or that one suffered personal humiliation, or both, must be proven; special damages, *i.e.*, out-of-pocket expenses borne by the plaintiff due to the defamation need not be proven." *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 344 (Pa. Super. 2008).

When addressing a defamation claim, the court "need resolve only the first element: whether the . . . statements could be defamatory." *McCafferty*, 955 F.3d at 357; *see Mallory*, 260 F. Supp. 3d at 458 ("In a defamation action, the Court must make a threshold determination of whether a challenged statement is capable of defamatory meaning." (citations omitted)). "A statement is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Graboff*, 744 F.3d at 136 (citation and internal quotation marks omitted). The statement "must provoke the kind of harm which has grievously fractured one's standing in the community of respectable society." *Id.* (citation, internal quotation marks, and alteration omitted). Importantly, "[a] defendant may avoid liability for defamation if it shows that its statements were 'substantially true.'" *Id.* (quoting 42 Pa. C.S. § 8343(b)(1)).

In this case, Deyo's potential defamation claim fails at the first level because he does not identify the alleged defamatory statements. While Deyo alleges that Officer Eck "construct[ed] a false narrative that was incredibly damaging to [his] character," was one of a group of people who "perjur[ed themselves] and falsif[ied] reports in an attempt to defame [his] character," and "decimated" Deyo's reputation, *see* Compl. at ECF pp. 6, 7, 8, at no point does he identify what Officer Eck said or wrote about him. Without this information, the court cannot analyze whether

the challenged statements are defamatory. Accordingly, any possible defamation claim fails. *See Weir v. Univ. of Pittsburgh*, Civ. A. No. 21-1206, 2022 WL 17095566, at *11 (W.D. Pa. Aug. 18, 2022) ("The Second Amended Complaint fails to identify the alleged defamatory statements, but rather, only alleges generally that the [defendants] 'maliciously mischaracterized and demonized Plaintiff in verbal and written publications to employees, students, and third-parties whom [sic] understood the defamatory nature and application to Plaintiff as described in preceding paragraphs.' Without a specific identification of any statement that Plaintiff contends is defamatory, his claim necessarily fails." (internal citation omitted)).

### d.  Claims Under the Pennsylvania Constitution

Deyo appears to also attempt to raise claims under the Pennsylvania Constitution. *See* Compl. at ECF p. 5. To the extent that Deyo purports to bring such claims, the court must dismiss them with prejudice because there is no private right of action for damages under the Pennsylvania Constitution. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution."); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

### III.    CONCLUSION

The court will grant Deyo leave to proceed *in forma pauperis*. The court will also dismiss the complaint in its entirety. This dismissal will be with prejudice as to (1) the section 1983 claim against the MTPD; (2) any claims for violations of the above-referenced sections of the Pennsylvania Criminal Code; (3) any claims under 11 Pa. C.S. § 12005, 18 Pa. C.S. § 9111, 18 Pa. C.S. § 9153, and 54 Pa. C.S. § 1124; and (4) any claims for damages for violations of the

Pennsylvania Constitution.[17] The dismissal will be without prejudice as to (1) the section 1983 official and individual capacity claims against Officer Eck; (2) any section 1983 claims relating to the conditions of Deyo's confinement at LCP (and any potential deliberate indifference to serious medical needs claims), which must be reasserted in a new civil action; (3) the claim for the return of Deyo's property, which must first be raised in the state courts; (4) the request for release from custody, which can only be asserted in a habeas petition; and (5) the state-law tort claims for false light invasion of privacy, false arrest, false imprisonment, and defamation. Deyo may attempt to replead these latter claims in an amended complaint, should he choose to do so.

The court will enter a separate order.[18]

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[17] A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). The court finds that amendment of these claims would be futile.
[18] The order will provide further instruction as to amendment.