IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS FRANCIS DEYO, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 23-1658 |
| | : | |
| v. | : | |
| | : | |
| PHILLIP R. ECK, Manor Township Police; | : | |
| CPL. TICE, Manor Township Police; | : | |
| OFC. HAAS, East Hempfield Police; | : | |
| OFC. TORRES, East Hempfield Police; | : | |
| CHRIS MILLER, District Attorney; | : | |
| CODY WADE, District Attorney; and | : | |
| CHERYL STEBERGER, Warden of the | : | |
| Lancaster County Prison, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                           September 27, 2023

The *pro se* plaintiff, a pretrial detainee confined in a Pennsylvania county jail awaiting the resolution of firearm and other related criminal charges, is proceeding *in forma pauperis* in this action where he has now filed an amended complaint seeking relief under 42 U.S.C. § 1983. In the amended complaint, the plaintiff sues four township police officers because they allegedly falsely arrested him, fabricated evidence, violated his *Miranda* rights, and conducted an unreasonable search and seizure of his vehicle in violation of the United States and Pennsylvania Constitutions. The plaintiff has also brought claims against two county assistant district attorneys who are prosecuting his case, and the warden of the county jail. Concerning the warden, the plaintiff alleges that he is being subjected to unconstitutional conditions of confinement and has experienced deliberate indifference to his serious medical needs. The plaintiff seeks money damages for these alleged constitutional violations.

As explained more below, the court will dismiss most of the claims in the amended complaint and stay those claims that could impugn or interfere with his ongoing criminal proceedings. More specifically, the court will (1) dismiss with prejudice (a) the claims against the two assistant district attorneys because the allegations in the amended complaint relate only to acts performed in their roles of prosecuting his criminal case and, as such, they are entitled to absolute prosecutorial immunity for those actions, and (b) any claims for damages for a *Miranda* violation or an unreasonable search and seizure under the Pennsylvania Constitution because the plaintiff cannot obtain relief for those claims; (2) dismiss without prejudice any claims based on the conditions of confinement or medical care at the county jail, but instruct the plaintiff (again) that if he wishes to replead such claims, he must do so by filing a separate civil action; and (3) stay pursuant to *Younger* abstention any claims for alleged violations of the Fourth or Fourteenth Amendments against the four officers based on what occurred at the time of his arrest or the search of his vehicle thereafter. For those claims that the court is staying, the plaintiff may seek to reopen this case as to only those claims once his state-court criminal proceedings have concluded.

## I.   ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Nicholas Francis Deyo ("Deyo"), commenced this action by filing a complaint against the Manor Township Police Department ("MTPD") and MTPD Officer Phillip R. Eck ("Officer Eck"), which was docketed in the United States District Court for the Middle District of Pennsylvania on April 26, 2023.[1] *See* Doc. No. 1. A day later, the Honorable Martin C.

---

[1] Deyo's allegations in the complaint related to Officer Eck and other members of law enforcement arresting him on October 29, 2022, searches and seizures that occurred at the time of his arrest or thereafter, and the conditions of his confinement during his subsequent detention at the Lancaster County Prison ("LCP") while awaiting the disposition of criminal charges filed against him. *See* Compl. at ECF pp. 7, 9, Doc. No. 1. Deyo asserted causes of action under 42 U.S.C. § 1983 for violations of his rights under the First, Second, Fourth, Fifth, Sixth, Eighth, and Ninth Amendments to the United States Constitution. *See id.* at ECF p. 3. He also raised claims for numerous violations of the Pennsylvania Constitution and several Pennsylvania statutes. *See id.* at ECF pp. 3, 5. For relief, Deyo sought monetary relief and various forms of declaratory relief. *See id.* at ECF p. 7. He also sought his immediate release and the return of property allegedly stolen by Officer Eck. *See id.* at ECF p. 10.

Carlson entered a memorandum opinion and order transferring the action to this court. *See* Doc. No. 4, 5. The action was docketed here on May 2, 2023. *See* Doc. No. 6.

Upon review of the docket, Deyo had not paid the filing fee or filed an application for leave to proceed *in forma pauperis* when he filed the complaint. As such, the clerk of court entered an order on May 4, 2023, giving Deyo 30 days from the date of the order to remit the filing fee or file an application for leave to proceed *in forma pauperis*. *See* Doc. No. 8. In response to this order, Deyo submitted an application for leave to proceed *in forma pauperis* (the "IFP Application") and a prisoner trust fund account statement, both of which the clerk's office docketed on May 22, 2023. *See* Doc. Nos. 10, 11. Along with these two documents, Deyo submitted a motion for a preliminary injunction, *see* Doc. No. 9, which this court denied via an order entered on May 26, 2023. *See* Doc. No. 12.

After reviewing the IFP Application and screening the complaint pursuant to 28 U.S.C. § 1915(e)(2), the court entered a memorandum opinion and order on June 5, 2023, which, *inter alia* (1) granted the IFP Application, (2) dismissed with prejudice Deyo's (a) section 1983 claim against the MTPD and (b) claims for violations of Pennsylvania statutes and the Pennsylvania Constitution,[2] and (3) dismissed without prejudice Deyo's (a) section 1983 official and individual capacity claims against Officer Eck, (b) section 1983 claim relating to the conditions of his confinement at LCP, (c) claim seeking the return of property Officer Eck allegedly stole, (d) request that he be released from incarceration, and (e) state-law tort claims.[3] *See* June 5, 2023 Mem. Op. at 8–30, Doc. No. 13; June 5, 2023 Order at 2, Doc. No. 14. The court also gave Deyo

---

[2] The court construed the complaint as raising claims for violations of the Pennsylvania Criminal Code and these additional Pennsylvania statutes: 11 Pa. C.S. § 12005, 18 Pa. C.S. § 9111, 18 Pa. C.S. § 9153, and 54 Pa. C.S. § 1124. *See* June 5, 2023 Mem. Op. at 21–30.

[3] The court construed the complaint as raising tort claims under Pennsylvania law for false light invasion of privacy, false arrest, false imprisonment, and defamation. *See* June 5, 2023 Mem. Op. at 25–27.

30 days to file an amended complaint should he desire to replead only his section 1983 official and individual capacity claims against Officer Eck and his state-law tort claims.[4] *See* June 5, 2023 Mem. Op. at 31; June 5, 2023 Order at 3.

On June 6, 2023, the clerk of court docketed several submissions from Deyo.[5] *See* Doc. Nos. 15–20. These submissions included: (1) copies of two letters purportedly drafted by two other individuals incarcerated at LCP, *see* Doc. No. 15; (2) a motion for leave to proceed *in forma pauperis*, *see* Doc. No. 16; (3) a copy of Deyo's prisoner trust fund account statement, *see* Doc. No. 17; (4) a motion for appointment of counsel, *see* Doc. No. 18; (5) a motion for extension of time to file answers and motions, *see* Doc. No. 19; and (6) a motion for writ of habeas corpus, *see* Doc. No. 20. On June 7, 2023, the court entered an order which denied Deyo's motions and directed that the clerk of court mail a copy of the standard form for the filing of a habeas petition under 28 U.S.C. § 2241 should Deyo decide to seek habeas relief in a new civil action. *See* June 7, 2023 Order at 1–2, Doc. No. 21.

Deyo's next activity in this case occurred on June 21, 2023, when he filed a notice of appeal to the Third Circuit Court of Appeals instead of filing an amended complaint. *See* Doc. No. 21. Then, while Deyo's appeal was pending before the Third Circuit, he filed an amended complaint that the clerk of court docketed on August 10, 2023. *See* Doc. No. 25. Five days later, the Third Circuit dismissed Deyo's appeal for his failure to prosecute. *See* Doc. No. 26. With this dismissal, Deyo's amended complaint is ripe for screening under 28 U.S.C. § 1915(e)(2)(B).

---

[4] Regarding the other claims that the court dismissed without prejudice, the court informed Deyo that (1) if he wanted to raise a section 1983 claim regarding his conditions of confinement at LCP, he would need to file a new civil action; (2) he would need to pursue a claim for the return of his property in state court; and (3) he would have to file a petition for a writ of habeas corpus if he sought his release from incarceration. *See* June 5, 2023 Mem. Op. at 18, 20–21, 31; June 5, 2023 Order at 2.

[5] Even though the clerk of court docketed these submissions on June 6, 2023, the clerk considers them to be filed as of June 5, 2023.

In the amended complaint, Deyo names as defendants: Officers Eck and Tice of the MTPD, Officers Haas and Torres of the East Hempfield Police Department, Lancaster County Assistant District Attorneys Cody Wade and Chris Miller ("ADA Wade" and "ADA Miller," respectively), and the Warden of LCP, Cheryl Steberger ("Warden Steberger").[6] *See* Am. Compl. at 3–5. Concerning his factual allegations, Deyo alleges that on October 29, 2022, at 7:00 a.m., he was waiting at an intersection in Lancaster, Pennsylvania for Justin Robinson ("Robinson"), who was supposed to be bringing "breakfast, coffee, and fishing tackle for a weekend of fishing and other sporting activities." *Id.* at ECF p. 6. Deyo was then "circled and approached by [Officer] Eck in his marked cruiser." *Id.* Officer Eck exited his cruiser, approached Deyo's truck window, and engaged in "a brief and mundane dialogue" with Deyo, before returning to his cruiser. *Id.*

A few minutes after returning to his cruiser, Officer Eck again approached Deyo's truck and "ushered him out of the vehicle [despite] lacking reasonable suspicion that there was any criminal activity afoot or that [Deyo] was armed or dangerous." *Id.* Officer Eck then asked to see Deyo's identification, and Deyo provided him with "a valid New York State driver's license." *Id.* Officer Eck then asked why Deyo was in the area, and Deyo explained the plans he had with Robinson, "which led to him calling Robinson to confirm [Deyo's] intentions." *Id.* At this time, Officer Tice arrived, Officer Eck told Deyo that he needed to speak with Officer Tice. *See id.* at ECF p. 7.

Deyo observed Officer Eck go to his car, get "on and off the phone," and "act[] strange." *Id.* More than ten minutes later, Officer Eck returned to Deyo's truck and "began harassing" Deyo,

---

[6] Deyo failed to comply with Federal Rule of Civil Procedure 10(a) by listing Warden Steberger as a defendant in only the body of the amended complaint instead of also listing her as a defendant in the caption, especially since he did not use "et al." in the caption to refer to multiple defendants. *See* Fed. R. Civ. P. 10(a) ("Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties.").

"which ultimately led to [Officer] Eck learning that [Deyo] had his weapons in the [truck]." *Id.* Officer Eck then "announced that he was going into [Deyo's] truck to 'make the scene safe.'" *Id.* At this point, Officers Torres and Haas arrived at the scene, and Officer Eck began searching Deyo's truck. *See id.*

According to Deyo, while searching the truck Officer Eck "began to tear [it] apart and located the weapons in the back seat." *Id.* Officer Eck then "stole [Deyo's] hardware," handcuffed him, and placed him in the back seat of his police cruiser. *Id.* Deyo remained in the back of Officer Eck's cruiser for ten minutes before Officer Eck asked Deyo for consent to search the rest of the truck, "to which [Deyo] obliged."[7] *Id.* At that point, Officers Eck, Torres, and Haas "tore [Deyo's] truck apart, and stole his weapons, body armor, and ammunition (all of which [wa]s registered and serialized in his name, and all receipts for everything [were] in the truck), including his $1,000 USD Samsung phone." *Id.* at ECF p. 8. At around the same time, ADA Wade advised Officer Eck to falsely charge Deyo with weapons offenses. *See id.* at ECF pp. 7–8, 15.

A tow truck was called to transport Deyo's truck, and while waiting for its arrival, Deyo observed Officer Eck use his personal phone to text someone the phrase "OH BOY." *Id.* at ECF p. 8. Deyo was later transported to the MTPD station, where upon his arrival, Officer Eck "took [him] out of the car and wrenched his arms upward while he was cuffed, to which [Officer] Eck said 'Sorry.'" *Id.* Then, "sometime after [he] arriv[ed] at the station, Deyo was first advised of his *Miranda* rights. *Id.*

Deyo was not permitted to make a phone call, and he was "cuffed to a bench in the back of the station alone for hours and hours [until Officers] Eck and Haas came . . . and admitted that they wantonly prejudiced [Deyo] as an 'active shooter' to which [Deyo] responded" he was not.

---

[7] Deyo asserts that his consent was "tainted by [Officer] Eck's, Tice's, Torres' and Hass' illegal detention of [him]." Am. Compl. at ECF p. 8.

Officer Eck also allegedly "[spun] a narrative conducive to his goals, and falsif[ied] police reports and falsely charge[d Deyo] as a person not to possess (PNP)." *Id.* at ECF p. 13. Specifically, Deyo contends that in an

> Affidavit of Probable Cause filed by [Officer] Eck (or one of the versions, anyway) he stated that he pulled up on [Deyo] without activating his lights, in a seeming attempt to assert that he had not engaged in an illegal action, among other serious factual flaws in the report such as that [Deyo was] a person not to possess firearms, as well as charging [Deyo] with altering serial numbers of a firearm, all while having no articulable reason to believe any such crimes occurred, nor were there any circumstances that would lead anyone to believe such things.

*Id.* at ECF pp. 14–15. Deyo further contends that in the "Application for a Warrant to Search," Officer Eck falsely noted "that he had reason to believe there may be a presence of explosives and 'anti-government literature' all in an attempt to achieve some deliberate and malicious outcome."[8] *Id.* at ECF p. 15.

"[M]uch later in the evening" of October 29, 2022, Deyo was relocated to LCP, where he has remained in custody. *See id.* at ECF pp. 8–9. While at LCP, Deyo claims that he has been denied medical treatment and subjected to "cruelly low[-]quality foods" and "subpar" living conditions at LCP, including "extreme heat and cold, black mold, [and] terrible food." *Id.* at ECF pp. 9, 16. He also claims that LCP is "critically low on medical staff," that treatment is "often inadequate" and provided on a "first come-first-serve" basis, and that there is an "utter lack of rehabilitative and mental health services available to [him] and his unfortunate counterparts." *Id.* at ECF pp. 11–12, 16–17. Deyo alleges that he filed grievances at LCP regarding these issues, but he has not received responses to those grievances. *See id.* at ECF pp. 9, 10, 12.

---

[8] Although not identified as defendants in the amended complaint, Deyo claims that the unnamed supervisors of Officers Tice, Eck, Haas, and Torres are liable for damages for the violations of his rights. *See* Am. Compl. at ECF p. 18.

Along with the above allegations concerning his arrest, subsequent search, and his conditions of confinement, Deyo raises claims regarding his ongoing criminal proceedings in the Court of Common Pleas of Lancaster County.[9] *See id.* at ECF pp. 9–11, 16, 19. According to Deyo, the assigned judge in his criminal case has not addressed the various motions he has filed due to the prohibition against hybrid representation. *See id.* at ECF pp. 9–10, 11. In addition, Deyo has been unsuccessful in terminating the representation of his assigned public defender, which he wants to accomplish so the court will finally consider his *pro se* filings. *See id.* at ECF p. 11. Deyo also asserts that ADA Miller has "relentlessly pursued these malicious charges" and conspired with Deyo's public defender in the attempt to secure an unjustified guilty plea from him. *See id.* at ECF p. 16.

Based on all his allegations, Deyo seeks monetary damages totaling $10 million. *See id.* at ECF p. 19. He also seeks reimbursement of any costs associated with this civil action and his Lancaster County criminal case. *See id.*

---

[9] The court reviewed the publicly available docket record for Deyo's criminal case in Lancaster County. *See Castro-Mota v. Smithson*, Civ. A. No. 20-CV-940, 2020 WL 3104775, at *1 n.3 (E.D. Pa. June 11, 2020) (explaining that district court may consider matters of public record, such as publicly available criminal dockets, "when . . . screening . . . a *pro se* complaint under [28 U.S.C.] § 1915" (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006))); *Wesley v. Varano*, Civ. A. No. 12-CV-1131, 2012 WL 2813827, at *1 (M.D. Pa. July 10, 2012) ("In disposing of a 12(b)(6) motion, in addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case; hence, a court also may consider these items in screening a complaint under the provisions of 28 U.S.C. § 1915." (citations omitted)); *Donahue v. Dauphin Cnty.*, Civ. A. No. 17-cv-1084, 2017 WL 3405112, at *1 n.1 (M.D. Pa. June 27, 2017) ("This publicly available state criminal docket, available online . . ., is a public record of which the Court may take judicial notice in considering dismissal for failure to state a claim." (citations omitted)); *Pearson v. Krasley*, Civ. A. No. 16-66, 2017 WL 2021061, at *1 (E.D. Pa. May 11, 2017) ("A court may also consider public records such as criminal dockets" when analyzing whether complaint fails to state claim for relief under Rule 12(b)(6)). The docket shows that Deyo is awaiting trial on various weapons charges and a charge of unlawfully possessing body armor. *See Commonwealth v. Deyo*, No. CP-36-CR-4747-2022 (Lancaster Cnty. Ct. Com. Pl.), *available at*: https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-36-CR-0004747-2022&dnh=e3do6uApn0NW0KthM0mMJA%3D%3D (last visited September 11, 2023).

## II.     DISCUSSION

### A.     Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915(e)(2)

Because Deyo is proceeding *in forma pauperis*, the court must examine whether the amended complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether an operative complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing an amended complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a[n amended] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's amended complaint fails to state a claim, the court must liberally construe the allegations set forth in the amended complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's amended complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—

they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

### B.   Analysis

In his amended complaint, Deyo generally asserts that the defendants violated his rights under the United States Constitution and is seeking relief for those violations under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). In addition, a plaintiff must allege how each defendant was personally involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (stating that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.); *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

After liberally construing Deyo's claims in the amended complaint, the court understands Deyo to be asserting claims (1) against the assistant district attorneys who are prosecuting his criminal case, (2) against Warden Steberger based on the conditions of his confinement at LCP and the medical care there, and (3) against Officers Eck, Tice, Haas, and Torres for alleged violations of his Fourth and Fourteenth Amendment rights during his arrest, the search of his vehicle, and his subsequent detention.[10]

### 1.    Claims Based on Conditions of Confinement and Treatment at LCP

In the initial complaint, Deyo raised claims relating to his confinement and treatment at LCP since his arrest. He alleged generally that he had been refused medical treatment, was subjected to "unlivable" conditions, and experienced excessive and public strip searches. *See* Compl. at ECF pp. 8, 10. The court dismissed these claims without prejudice because Deyo failed to adequately tie those allegations to the defendants named in the complaint. *See* June 5, 2023 Mem. Op. at 17–18. The court also instructed Deyo that if he intended to pursue claims relating to his confinement and treatment at LCP against appropriate defendants, he needed to file a separate lawsuit. *See id.* at 18. Instead of following the court's direction, Deyo named Warden Steberger as a defendant in the amended complaint, and he again attempts to raise claims pertaining to his confinement and treatment at LCP. *See* Am. Compl. at ECF pp. 5, 9, 12, 16–17.

---

[10] To the extent that Deyo once again attempts to bring claims under the Pennsylvania Constitution, *see, e.g.*, Am. Compl. at ECF p. 16 (indicating that ADA Miller violated his "State Constitutional Rights"), as this court previously noted, *see* June 5, 2023 Mem. Op. at 30, there is no private right of action for damages under the Pennsylvania Constitution. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution."); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

a.    Law Applicable to a Pretrial Detainee's Conditions-of-Confinement and Failure-to-Provide Medical Treatment Claims

i.    *Conditions of Confinement*

The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees challenging their conditions of confinement. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) ("*Hubbard I*"). To establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee plaintiff would have to plausibly allege that the challenged conditions of confinement amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."); *see also Bistrian*, 696 F.3d at 373 ("Given pretrial detainees' federally protected liberty interests . . . under the Due Process Clause . . . a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." (citation and internal quotation marks omitted)). When analyzing whether a condition of confinement amounts to punishment, the inquiry generally turns on whether the challenged conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See Bell*, 441 U.S. at 538–39 ("A court must decide whether the [particular restriction or condition accompanying pretrial detention] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020) (explaining that, when evaluating claims of punitive conditions of confinement, "[t]he touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) ("*Hubbard II*"))); *Hubbard I* at 158 (discussing analysis of

whether condition of confinement constitutes punishment for Fourteenth Amendment purposes).[11]
In addition, the court should consider the totality of the circumstances in assessing whether a
prisoner's conditions of confinement violate the Fourteenth Amendment. *See Hubbard II*, 538 F.3d
at 236, 238 (examining totality of circumstances to determine whether conditions of confinement
constitute Fourteenth Amendment violation); *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996)
(explaining that "to determine whether conditions of confinement violate the Eighth Amendment,
it is necessary to examine the totality of the conditions at the institution"); *Union Cnty. Jail Inmates
v. DiBuono*, 713 F.2d 984, 1000–01 (3d Cir. 1983) (discussing that "the overall length of
confinement is only one factor among several that must be considered by a district court in
evaluating the totality of circumstances relevant to any alleged constitutional deficiency in
shelter").

"Unconstitutional punishment typically includes both objective and subjective
components." *Stevenson*, 495 F.3d at 68. "[T]he objective component requires an inquiry into
whether the deprivation was sufficiently serious and the subjective component whether the
officials acted with a sufficiently culpable state of mind." *Id.* (internal quotation marks and
alterations omitted). In general, when alleging a sufficiently culpable state of mind, a detainee
must assert that prison officials acted with deliberate indifference, meaning that they consciously

---

[11] The *Bell* Court also explained:

> Absent a showing of an expressed intent to punish on the part of detention facility officials, that
> determination generally will turn on whether an alternative purpose to which [the restriction] may
> rationally be connected is assignable for it, and whether it appears excessive in relation to the
> alternative purpose assigned [to it].  Thus, if a particular condition or restriction of pretrial detention
> is reasonably related to a legitimate governmental objective, it does not, without more, amount to
> punishment.  Conversely, if a restriction or condition is not reasonably related to a legitimate goal-
> if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental
> action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

441 U.S. at 538–39 (internal quotation marks, citations, and footnote omitted).

disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294,

298–99 (1991); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference."); *cf. Edwards v. Northampton Cnty.*, 663 F. App'x

132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to

apply a different standard here as we have applied the 'deliberate indifference' standard both in

cases involving prisoners, and pretrial detainees[.]" (internal citations omitted)). Furthermore,

> [i]n determining whether restrictions or conditions are reasonably related to the
> Government's interest in maintaining security and order and operating the
> institution in a manageable fashion, courts must heed our warning that "[s]uch
> considerations are peculiarly within the province and professional expertise of
> corrections officials, and, in the absence of substantial evidence in the record to
> indicate that the officials have exaggerated their response to these considerations,
> courts should ordinarily defer to their expert judgment in such matters."

*Bell*, 441 U.S. at 541 n.23 (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974)).

### ii.    *Failure to Provide Medical Treatment*

To state a constitutional claim based on the failure to provide medical treatment, a prisoner

must allege facts indicating that prison officials were deliberately indifferent to the prisoner's

serious medical needs.[12] *See Farmer*, 511 U.S. at 835. A prison official is not deliberately

indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety;

the official must both be aware of facts from which the inference could be drawn that a substantial

---

[12] Although the court has analyzed this cause of action under the Fourteenth Amendment due to Deyo's status as a
pretrial detainee, even if the court had analyzed it under the Eighth Amendment, the analysis is essentially the same.
*See Goode v. Giorla*, 643 F. App'x 127, 129 (3d Cir. 2016) (per curiam) ("A deliberate indifference claim, under
either the Fourteenth or Eighth Amendment, requires acts or omissions sufficiently harmful to evidence deliberate
indifference to serious medical needs." (footnote and internal quotation marks omitted)); *Natale v. Camden Cnty.
Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (evaluating pretrial detainee's "Fourteenth Amendment claim for
inadequate medical care under the standard used to evaluate similar claims brought under the Eighth Amendment");
*see also Moore v. Luffey*, 767 F. App'x 335, 340 & n.2 (3d Cir. 2019) (evaluating deliberate indifference to serious
medical needs claim by pretrial detainee under Eighth Amendment standard, declining to address whether new
standard applies to these types of claims by pretrial detainees, and discussing similarity of standards under Eighth and
Fourteenth Amendments).

risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (explaining that plaintiff can show deliberate indifference where prison official "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed" (internal citations and quotation marks omitted)). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

In addition, "[i]f a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236; *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (per curiam) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Thus, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are

mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Spruill*, 372 F.3d at 236. Yet,

> [e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, . . . though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable.

*McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (citations omitted).

b.   <u>Individual Capacity Claims</u>

Deyo's claims based on the conditions of his confinement and medical care at LCP against Warden Steberger fail because he simply has not alleged any basis for concluding that the warden was personally involved in the alleged constitutional violations. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct" (quoting *Iqbal*, 556 U.S. at 677)).[13] In addition, to the extent that Deyo attempts to bring claims against Warden Steberger in her individual capacity based on her role as a supervisor, he has failed to allege a plausible claim for relief.

Deyo may not assert a claim against Warden Steberger based merely on allegations that she supervised individuals at LCP because liability under section 1983 cannot be predicated on a respondeat superior basis. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) ("[Plaintiff] cannot predicate liability on her § 1983 claims on a *respondeat superior* basis."

---

[13] To the extent Deyo brings claims against Warden Steberger based solely on her involvement in denying his grievances, such claims are also implausible. Participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (per curiam) ("The District Court properly determined that Defendants . . . who participated only in the denial of [the plaintiff]'s grievances – lacked the requisite personal involvement [in the conduct at issue.]"); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").

(citing *Rode*, 845 F.2d at 1207)); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at \*2 (3d Cir. Nov. 28, 2022) ("We agree with the District Court that Robinson's second amended complaint did not state a plausible claim for relief. First, he failed to allege the defendants' personal involvement, and he cannot predicate liability on his § 1983 claims on a respondeat superior basis." (internal citations omitted)). Instead, if Deyo seeks to hold a supervisor liable for unconstitutional acts by subordinates, his allegations must satisfy one of two theories of supervisory liability: First, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *see Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim, and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff such as Deyo must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions

> demonstrating the supervisor's deliberate indifference to the inmate's risk of injury
> and must establish a link between the supervisor, the act, and the injury.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (per curiam) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *Zigler v. Warren*, Civ. A. No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor."). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Here, Deyo has set forth only generalized allegations that the conditions of his confinement at LCP, and his medical care there, violated his constitutional rights. Nonetheless, even presuming that his factual allegations could be liberally construed to support constitutional claims, Deyo has not plausibly alleged a claim of supervisory liability against Warden Steberger. He has not pleaded a municipal policy or custom with respect to the alleged constitutional violations, that such policy or custom caused the constitutional violation, or municipal failures amounting to deliberate

indifference. Instead, Deyo appears to draw his conclusion that Warden Steberger was responsible merely based on her supervisory role, which is not a proper basis for a section 1983 claim against her. Accordingly, the court will dismiss without prejudice Deyo's individual capacity claims against Warden Steberger.

### 2.   Official Capacity Claims and *Monell* Liability

Deyo also seeks to assert constitutional claims against Warden Steberger pursuant to section 1983 in her official capacity, and claims pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). *See* Am. Compl. at ECF pp. 2, 18.[14] Claims against municipal employees, such as Warden Steberger, in their official capacities, are indistinguishable from claims against the governmental entity that employs them, here, Lancaster County. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n.55))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To assert plausible claims against Lancaster County, Deyo must allege that it has a policy or custom which caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694 ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Deyo cannot satisfy this burden by simply paraphrasing the standard for municipal liability because such allegations are too vague and generalized to support a plausible claim. *See, e.g.*,

---

[14] Deyo mistakenly identifies *Monell* as "Mannell." Am. Compl. at ECF. 18.

*Szerensci v. Shimshock*, Civ. A. No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021)
("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is
insufficient to state a claim for § 1983 liability under *Monell*."). Deyo "must identify [the] custom
or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading
standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted). A
"policy" arises when a decision-maker possessing final authority issues an official proclamation,
policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "'Custom, on the other
hand, can be proven by showing that a given course of conduct, although not specifically endorsed
or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Estate of
Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Bielevicz v. Dubinon*, 915
F.2d 845, 850 (3d Cir. 1990)).

It is not enough to allege the existence of a policy or custom. Instead, "[a] plaintiff must
also allege that the policy or custom was  the 'proximate cause' of [their] injuries." *Id.* (citing
*Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). For a custom to be the proximate cause of
an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct
in the past, failed to take precautions against future violations, and that its failure, at least in part,
led to [the plaintiff's] injury." *Id.* (internal quotation marks and alterations omitted). Overall, a
plaintiff must "demonstrat[e] an 'affirmative link' between the policy or custom and the particular
constitutional violation alleged." *Id.* (quoting *Bielevicz*, 915 F.2d at 850).

Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a
custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the
policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469,
1480 (3d Cir. 1990); *see also Bielevicz*, 915 F.2d at 850 (explaining that in both methods to obtain

liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").

In addition,

> [t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice is likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg*, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Natale*, 318 F.3d at 584 (alterations in original) (internal footnote omitted).

In this instance, Deyo has failed to allege any facts to support *Monell* liability against Lancaster County through his official liability claim against Warden Steberger. As already noted, Deyo has not identified a municipal policy or custom concerning the alleged constitutional violations, that such policy or custom caused the constitutional violations, or municipal failures amounting to deliberate indifference. Thus, any official capacity claims against Warden Steberger and *Monell* claims against Lancaster County are implausible as alleged.

Based on the court's analysis above, the court will dismiss without prejudice Deyo's claims based on the conditions of his confinement at LCP, and medical care there.[15] Once again, the court

---

[15] Deyo makes a reference to a cause of action for a state-created danger. *See* Am. Compl. at ECF p. 17. A plaintiff may seek section 1983 liability when the state affirmatively places a person in danger; that is, when a state-created

instructs Deyo that if he wishes to pursue any such claims, he must file them in a separate lawsuit against appropriate defendants.[16] Should Deyo file a separate lawsuit, he will be obligated to pay the fees for that lawsuit or, if he cannot afford to do so, he must seek leave to proceed *in forma pauperis*. *See* 28 U.S.C. §§ 1914, 1915.

## 2.    Claims Against ADAs Wade and Miller

Deyo's claims against ADAs Wade and Miller are based on their actions taken during the prosecution of his state criminal case. *See* Am. Compl. at ECF pp. 7–8, 15 (alleging ADA Wade advised Officer Eck to falsely charge Deyo with weapons offenses); *id.* at ECF p. 16 (alleging that ADA Miller has "relentlessly pursued these malicious charges" and conspired with Deyo's public defender to secure guilty plea). As prosecutors, ADAs Wade and Miller are entitled to absolute immunity from liability under section 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). Moreover, district attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348–49 (2009). Further, absolute immunity extends to instances of "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence, *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir.

---

danger causes a plaintiff harm. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) ("[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."). To state a viable state-created danger claim, a plaintiff must show, *inter alia*, that "a state actor acted with a degree of culpability that shocks the conscience." *Walter v. Pike Cnty., Pa.*, 544 F.3d 182, 192 (3d Cir. 2008). As with his other claims, Deyo has failed to plead any facts that approach a plausible state-created danger claim.

[16] The court expresses no opinion on the merits of any such claims.

2020). Prosecutors are not absolutely immune when they are "not acting as 'an officer of the court,' but . . . instead engaged in other tasks, [such as] investigative or administrative tasks." *Van de Kamp*, 555 U.S. at 342 (quoting *Imbler*, 424 U.S. at 431 n.33). In the end, "whether a prosecutor is entitled to absolute immunity depends on whether [they] establish[] that [they were] functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." *Yarris v. Cnty. of Del.*, 465 F.3d 129, 136 (3d Cir. 2006). Because Deyo's claims against ADAs Wade and Miller are based upon their actions as prosecutors representing the Commonwealth in the judicial phase of Deyo's state criminal proceedings, each is entitled to absolute immunity. Accordingly, the court will dismiss with prejudice Deyo's claims against them.

### 3.    Claims Based on *Miranda* Rights

Deyo suggests that there was some delay in advising him of his *Miranda* rights during his arrest and subsequent detention. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (holding that when engaging in custodial interrogation, police officers must inform suspect that "[they have] the right to remain silent, that anything [they] say[] can be used against [them] in a court of law, that [they have] the right to the presence of an attorney, and that if [they] cannot afford an attorney, one will be appointed for [them] prior to any questioning, if [they] so desire[]"); *see also* Am. Compl. at ECF pp. 8, 12–13 (alleging delay in reading *Miranda* warnings). To the extent that Deyo seeks to assert a section 1983 claim based on a violation of his *Miranda* rights, the court must dismiss it with prejudice because *Miranda* violations do not "provide[] a basis for a claim under § 1983." *Vega v. Tekoh*, 142 S. Ct. 2095, 2101 (2022); *see also id.* (reasoning that "a violation of *Miranda* is not itself a violation of the Fifth Amendment" and finding "no justification for expanding *Miranda* to confer a right to sue under § 1983").

4.      **Claims Based on Fourth and Fourteenth Amendments**

Deyo's remaining claims against Officers Eck, Tice, Haas, and Torres are best construed as alleging violations of his rights secured by the Fourth and Fourteenth Amendments. The court understands Deyo to be asserting Fourth Amendment claims for false arrest, false imprisonment, and unreasonable search and seizure.[17] He also asserts a Fourteenth Amendment claim based on the alleged fabrication of evidence against him.[18] Despite Deyo's assertion of these claims, the

---

[17] To plead a claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff must allege facts plausibly establishing that they were arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) ("[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest. . . . If the jury found in [the arrestee's] favor on the false arrest claim, it could also find that [they] suffered a violation of [their] constitutional rights by virtue of his detention pursuant to that arrest.") *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005) (explaining that false arrest and false imprisonment are "nearly identical claims"). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti*, 71 F.3d at 483 (citation omitted). The court uses a totality-of-the-circumstances approach to assess the reasonableness of the officer's conduct, and the court considers the officer's perspective at the time he or she acted. *Carswell v. Borough of Homestead*, 381 F.3d 235, 246 (3d Cir. 2004). The standard is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). Probable cause exists if "at the moment the arrest was made . . . the facts and circumstances within [the defendant's] knowledge and of which [he or she] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the plaintiff had violated the law. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

The elements of a section 1983 claim for unreasonable search and seizure are: (1) the actions of the police officers constituted a search or seizure within the meaning of the Fourth Amendment; and (2) the actions were unreasonable in light of the surrounding circumstances. *See Brower v. Cnty of Inyo*, 489 U.S. 593, 597–99 (1989). Whether the officers' actions were unreasonable depends on "the totality of the circumstances" leading up to the allegedly unlawful seizure. *Abraham v. Raso*, 183 F.3d 279, 289–91 (3d Cir. 1999). When examining the totality of the circumstances, the court must not impose "the 20/20 vision of hindsight" and acknowledge "the fact that police officers are often forced to make split-second judgments . . . in circumstances that are tense, uncertain, and rapidly evolving." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The court must also consider the following factors:

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, . . . whether he is actively resisting arrest or attempting to evade arrest by flight[,] . . . the duration of the [officers'] action[s], whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Couden v. Duffy*, 446 F.3d 483, 496–97 (3d Cir. 2006) (citations omitted).

[18] In general, a fabrication-of-evidence claim under section 1983 implicates the Due Process Clause of the Fourteenth Amendment. *See Black v. Montgomery Cnty.*, 835 F.3d 358, 370 (3d Cir. 2016) ("Fabricated evidence is an affront to due process of law, and state actors seeking to frame citizens undermine fundamental fairness and are responsible for 'corruption of the truth-seeking function of the trial process.'" (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976))); *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014) ("[W]e hold that if a defendant has been convicted at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983

court must abstain from ruling on them, as they seek money damages arising from his October 29, 2022 arrest and subsequent prosecution, in order to avoid interfering in his pending criminal proceedings in state court.

This court is obliged to abstain from considering certain types of cases pursuant to the principles of *Younger v. Harris*, 401 U.S. 37 (1971). "To promote comity between the national and state governments," the *Younger* abstention doctrine "requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings." *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 461 (3d Cir. 2019) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77–78 (2013)). When determining whether *Younger* abstention is proper, the court first must examine the underlying state court litigation to determine whether it falls into one of three categories of cases: (1) criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving orders in furtherance of the state courts' judicial function. *See PDX N., Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020)

---

based on the Fourteenth Amendment if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted.").[18] This claim is a stand-alone section 1983 claim and does not need to be a part of a malicious prosecution claim. *See Halsey*, 750 F.3d at 293 ("[W]e reject the contention that there cannot be a stand-alone Fourteenth Amendment claim predicated on the fabrication of evidence.").

The Third Circuit's "reasonable likelihood" causation standard "requires that a plaintiff draw a 'meaningful connection' between [their] particular due process injury and the use of fabricated evidence against [them]." *Id.* at 731 (quoting *Halsey*, 750 F.3d at 294 n.19). In addition,

> [a]side from the causation requirement, there are other hurdles facing a plaintiff alleging a due process violation for fabrication of evidence. For instance, . . . a . . . plaintiff[] . . . [must] demonstrate that the fabricated evidence "was so significant that it could have affected the outcome of the criminal case." *See Halsey*, 750 F.3d at 295. In addition, there is a notable bar for evidence to be considered "fabricated." . . . "[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Id.* There must be "persuasive evidence supporting a conclusion that the proponents of the evidence" are aware that evidence is incorrect or that the evidence is offered in bad faith. *Id.* [As such, "it"] will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case." *Id.* at 295.

*Black*, 835 F.3d at 372 (footnote omitted).

(internal quotation marks omitted), *cert. denied*, 142 S. Ct. 69 (2021). Because Deyo's criminal prosecution is the underlying state court litigation here, the first stage of the analysis is met.

At the second stage, the court must consider three factors, whether: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the state proceeding. *See Malhan*, 938 F.3d at 462–64 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982)). The *Younger* requirements are clearly met in this case. First, the publicly available docket for Deyo's criminal case indicates that the proceeding is still pending. Second, the state proceedings implicate the important interest of enforcing the Commonwealth's criminal laws. Third, the criminal proceedings provide Deyo an adequate opportunity to raise in the state forum federal constitutional defenses to his prosecution. *See Jaffery v. Atl. Cnty. Prosecutor's Office*, 695 F. App'x 38, 40–41 (3d Cir. 2017) (concluding *Younger* applied where "[t]here are ongoing state criminal proceedings in the Superior Court of New Jersey that are judicial in nature, the state proceedings implicate the important state interest in prosecuting criminal behavior, and the state proceedings provide Jaffery an opportunity to raise federal constitutional defenses to prosecution"). Further, Deyo has failed to plausibly allege that his claims fall within any of the narrow exceptions to the *Younger* doctrine.[19] *See Stagliano v. Coll*, No. 22-2691, 2023 WL 3943732, at *4 (3d Cir. June 12, 2023) (per curiam) (affirming district court's application of *Younger* doctrine where plaintiff failed to plausibly plead that state proceedings were being undertaken in bad faith or for purposes of harassment, or some other extraordinary circumstances

---

[19] Exceptions to the *Younger* doctrine exist where irreparable injury is "both great and immediate," where the state law is flagrantly and patently violative of express constitutional prohibitions," or where there is a showing of "bad faith, harassment, or . . . other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S. at 46, 53–54. These exceptions are narrowly construed. *See Hall v. Pennsylvania*, Civ. No. 3:CV-12-2373, 2012 5987142, at *2 (M.D. Pa. Nov. 29, 2012) (citing *Loftus v. Twp. of Lawrence Park*, 764 F. Supp. 354, 357 (W.D. Pa. 1991)).

existed); *see also Kelly v. Swartz*, Nos. 21-3198, 22-2079, 2023 WL 3018282, at *3 (3d Cir. Apr. 20, 2023) (affirming district court's application of *Younger* abstention where plaintiff failed to support adequately her claim of bad faith, harassment, or extraordinary circumstances and "merely present[ed] conclusory statements").

Based on the above, this court finds that it is appropriate to abstain from entertaining the claims against Officers Eck, Tice, Haas, and Torres out of deference to the state judicial process. Accordingly, the court will stay Deyo's claims for damages based on alleged violations of his Fourth and Fourteenth Amendment rights during the pendency of the state criminal proceedings. *See Wallace v. Kato*, 549 U.S. 384, 393–94 (2007) ("If a plaintiff files a false-arrest claim before [they have] been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.");[20] *Rex v. Fisher*, Civ. A. No. 12-4045, 2012 WL 3537846, at *2 (E.D. Pa. Aug. 15, 2012) (staying false arrest and illegal search claims for damages in light of pending criminal prosecution when plaintiff "ha[d] the opportunity to raise his Fourth-Amendment challenges in the course of his criminal proceeding"); *Ellis v. Mondello*, No. Civ. A. 05-1492, 2005 WL 1703194, at *3 (D.N.J. July 20, 2005) ("[A]ssuming the criminal action is still pending in a state trial or appellate court, review of the state court proceedings would be barred; a district court cannot interfere in a pending state criminal action in order to consider issues that a plaintiff can raise there." (citation omitted)); *see also Borowski v. Kean Univ.*, 68 F.4th 844, 855 (3d Cir. 2023)

---

[20] Although this court is abstaining from hearing Deyo's claims that could operate to impugn or interfere with his ongoing criminal proceedings pursuant to *Younger* abstention, when the United States Supreme Court first discussed abstention as possibly being the appropriate response for a district court to take when "a state criminal defendant brings a federal civil-rights lawsuit during the pendency of [their] criminal trial, appeal, or state habeas action," the Court interestingly cited to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) instead of *Younger*. *See Heck v. Humphrey*, 512 U.S. 477, 487 n.8 (1994).

("[D]ismissal of a damages claim on abstention grounds is no longer permissible."); *Williams v.*
*Hepting*, 844 F.2d 138, 144 (3d Cir. 1988) ("Williams' civil rights claims seek damages, relief that
is unavailable from his ongoing state proceedings. We have required the district court to stay rather
than dismiss claims that are under consideration in ongoing state proceedings.").

## III.    CONCLUSION

As set forth more fully above, the court will dismiss without prejudice Deyo's claims based
on the conditions of his confinement at LCP, and his medical care there, for the failure to state a
claim. The court will also dismiss without prejudice any purported state-created danger claim.
Because these claims are (1) asserted only against Warden Steberger, (2) independent of the claims
subject to the *Younger* stay, and (3) would be otherwise severable under Federal Rule of Civil
Procedure 21, the court will not permit Deyo to amend those claims in this case. Instead, if Deyo
is capable of curing the defects the court has identified in those claims, he may proceed on them
by filing a new civil action.[21]

---

[21] Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to
relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same
transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all
defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "For courts applying Rule 20 and related rules, 'the
impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of
claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting
*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). "But this application, however liberal, is not a
license to join unrelated claims and defendants in one lawsuit." *McKinney v. Prosecutor's Office*, Civ. No. 13-2553,
2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (citations and internal quotation marks omitted). "Thus[,] multiple
claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B
against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). To remedy a misjoinder, a court may add
or drop a party or sever any claims. *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an
action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also
sever any claim against a party."). "A district court has broad discretion in deciding whether to sever a party pursuant
to Federal Rule of Civil Procedure 21." *Boyer v. Johnson Matthey, Inc.*, No. Civ. A. 02-8382, 2004 WL 835082, at *1
(E.D. Pa. Apr. 16, 2004).

    Here, because the claims in the amended complaint concerning the conditions and Deyo's treatment at LCP
are wholly separate from the claims related to his arrest and detention that form the primary basis of this civil action,
the court will not permit amendment of those claims in this case. Rather, if Deyo seeks to pursue those claims, he may
do so by filing a new civil action. Deyo will be obligated to pay the fees for that lawsuit or, if he cannot afford to do
so, he must seek leave to proceed *in forma pauperis* by filing an appropriate application and accompanying documents.
*See* 28 U.S.C. §§ 1914, 1915.

Furthermore, the court will dismiss with prejudice the following claims for the failure to state a claim: (1) the section 1983 claims against ADAs Wade and Miller;[22] (2) the section 1983 claims based on an alleged violation of Deyo's *Miranda* rights; and (3) any claims for damages based on alleged violations of the Pennsylvania Constitution. The court is dismissing these claims with prejudice because amendment of these claims would be futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule that court should grant leave to amend unless doing so would be futile); *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment— irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.").

As for Deyo's claims against Officers Eck, Tice, Haas, and Torres, the court will stay those claims pursuant to *Younger*. Deyo may move to reopen this aspect of his case following resolution of his criminal case.[23]

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[22] ADAs Wade and Miller are also immune from Deyo's claims for monetary damages. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

[23] Given the need to stay further proceedings, the court expresses no opinion at this time whether any remaining claim suffers any additional deficiencies.